Defendants-appellants, C. Thomas Cook ("Cook"), J. Robert Mack ("Mack"), and Banc One Services Corp. ("Banc One") (collectively "defendants" or of appellants"), appeal from a jury verdict in favor of plaintiff-appellee, Patricia J. Toole ("plaintiff" or "appellee") on her claims of promissory estoppel and unlawful retaliation. In particular, the appellants contend that the evidence adduced below was insufficient to support either her claims or the jury's award of punitive damages. Plaintiff has cross-appealed the trial court's refusal to award attorney fees. We affirm in all respects.
In early May 1995, after nineteen years with her employer in Cleveland, Ohio, plaintiff accepted the position of Vice-President of Telecommunications with defendant Banc One in Columbus, Ohio. Plaintiff claims that she took the position with Banc One only after Cook, one of her superiors-to-be at Banc One, made oral statements to plaintiff that she believed were specific promises of long-term job security. Plaintiff began work with Banc One on July 5, 1995.
Approximately seven months later, on February 14, 1996, Cook informed plaintiff that her position at Banc One was being eliminated due to budget reductions. At the same time, plaintiff was given a written "Notification of Downsizing" stating: (1) that her position was being eliminated "effective 5/14/96"; (2) that until May 14, 1996, she would "remain an active employee" of Banc One with full pay and benefits; (3) that it was not necessary for her to return to the workplace; (4) that she was to immediately "take an active role" in searching for a new position either internal or external to Banc One; (5) that she would receive preferential treatment on available Banc One jobs including the internal assistance of Banc One human resources personnel; (6) that she would be provided executive outplacement services; and (7) that if she failed to find a comparable job by May 14, 1996, and provided she signed a "Separation Agreement and General Release," plaintiff would receive a severance payment of four additional months of pay. If plaintiff chose to leave Banc One or accepted a transfer of employment before May 14, 1996, she would not be eligible for the severance pay.
One week later, on February 21, 1996, plaintiff sued Banc One and Cook alleging a promissory estoppel claim, as well as claims of age and sex discrimination under Ohio law. At least four times in her complaint, plaintiff alleged that she had been "terminated" by Banc One on February 14, 1996.
Upon receipt of the complaint, Mack, the Corporate Compliance Manager in the Human Resources Department for Bank One Corporation (Banc One's parent corporation), sent a letter dated February 27, 1996, to plaintiff acknowledging the filing of the lawsuit and withdrawing the above-described "benefits package." In particular, the letter stated as follows:
Dear Ms. Toole:
 This is to advise you that we have knowledge of the lawsuit which you filed with the court of Common Pleas on February 21, 1996. As a result of this action, we have concluded that you have rejected the package of benefits which was offered to you on February 14, 1996, which included, among others:
 * the opportunity to be considered for other employment opportunities at BANC ONE
 * continuing employment status at your current salary for 90 days
 * the possibility of four months severance pay if you did not remain employed with BANC ONE
* the services of an outplacement consultant
 With the filing of your lawsuit, we consider that you have effectively resigned from employment at BANC ONE. With this letter, the above-referenced benefits package is hereby withdrawn. If you have any questions, I may be reached at (614)248-6656.
Sincerely,
J. Robert Mack
In response to the February 27, 1996 letter, plaintiff amended her complaint by adding an unlawful retaliation claim against Banc One and Mack personally.
After summary judgment was granted for defendants on plaintiff's age and sex discrimination claims, a jury trial on plaintiff's promissory estoppel and retaliation claims was commenced on September 22, 1997. At the close of plaintiff's case and at the conclusion of all the evidence, the defendants moved for a directed verdict on plaintiff's claims and request for punitive damages. Both motions were denied. On October 2, 1997, the jury returned a verdict for plaintiff on both of her claims. The jury awarded plaintiff $115,316 in compensatory damages, $105,000 in emotional damages, $250,000 in punitive damages, and found that she was entitled to her attorney fees. On April 22, 1998, the trial court overruled plaintiff's request for attorney fees holding that the punitive damages otherwise awarded by the jury were sufficient to both compensate the plaintiff for her attorney fees and still have the appropriate deterrent effect on the defendants. On May 1, 1998, after a series of post-trial motions by the parties, the trial court entered judgment in favor of plaintiff for a total of $489,205.81 — equaling the $470,316 awarded by the jury plus prejudgment interest of $18,889.81. It is from this judgment entry that the parties timely appealed.
Defendants raise the following three assignments of error.
 1. The Common Pleas Court erred in denying Appellants' motions for directed verdict and for judgment notwithstanding the verdict or for a new trial on Appellee's promissory estoppel claim.
 2. The Common Pleas Court erred in denying Appellants' motion in limine to exclude evidence relating to punitive damages and Appellants' motions for directed verdict and judgment notwithstanding the verdict or for a new trial on the issue of punitive damages.
 3. The Common Pleas Court erred in denying Appellants' motions for directed verdict and for judgment notwithstanding the verdict or for a new trial on Appellee's retaliation claim.
Plaintiff raises the following single assignment of error:
 The trial court erred in refusing to award any attorney's fees as a part of punitive damages when the jury mandates such an award.
 DEFENDANTS' APPEAL
Applicable to all three of their assignments of error, appellants first argue that plaintiff's claims are preempted by the National Bank Act. In particular, appellants argue that Section 24, Title 12, U.S. Code preempts state laws governing the employment relationship between a national bank and its officers, which appellants contend would include plaintiff's promissory estoppel and state law retaliation claim at issue here. Appellants, however, failed to raise this preemption defense in their answer or argue it at any stage of the litigation below. As such, appellants have waived this argument and are precluded from raising it here on appeal. SeeGallagher v. Cleveland Browns Football Co. (1996), 74 Ohio St.3d 427
(defendant waived defense of primary assumption of risk by failing to raise it before or during the trial); Cooperv. Grace Baptist Church of Columbus, Ohio, Inc. (1992), 81 Ohio App.3d 728,735 (by failing to raise defense of privilege in their pleadings, defendants waived it).
In their third assignment of error, appellants contend that the trial court erred in failing to grant them a directed verdict or judgment notwithstanding the verdict ("JNOV") pursuant to Civ. R. 50 or a new trial pursuant to Civ.R. 59(A)(6) as to plaintiff's retaliation claim. In particular, appellants contend that the evidence adduced at trial was otherwise insufficient as a matter of law to support a claim for retaliation and/or that the jury verdict finding such retaliation was otherwise against the manifest weight of the evidence.
The standard for determining a motion for directed verdict or a judgment notwithstanding the verdict is akin to that used for determining a motion for summary judgment. A motion for directed verdict or JNOV may be granted if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). Thus, the trial court does not engage in a weighing of the evidence or evaluate the credibility of the witnesses. "Rather, the court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?" Malone v. Courtyard By Marriott (1996),74 Ohio St.3d 440, 445; see, also, Miller v. Paulson (1994),97 Ohio App.3d 217, 221 (describing standard in JNOV context). Appellate review of a motion for directed verdict or JNOV is denovo.
The standard for determining a motion for new trial under Civ.R. 59(A)(6) is different from that used in determining a motion for directed verdict or JNOV. When a party files a motion for a new trial on the grounds that the judgment is not sustained by the weight of the evidence, the trial court must engage in a limited weighing of the evidence including the credibility of the witnesses. Rohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph three of the syllabus, 92-93; Miller,supra, at 224. Thus, while a trial court may not grant a new trial because of a mere disagreement with the jury, the trial court may do so in order to prevent a miscarriage of justice because the judgment is manifestly against the weight of the evidence. Rohde, supra. Moreover, given that the trial court is in the better position to pass on questions of witness credibility and the weight of the evidence in general, a reviewing court may not reverse a determination on a motion for new trial except upon a finding of an abuse of discretion. Id.;Malone, supra, at 448. "[T]he abuse of discretion standard requires a reviewing court to 'view the evidence favorably to the trial court's action rather than to the original jury's verdict.'" Malone, supra (quoting Rohde, supra, at 94).
Ohio law prohibits employers from retaliating against employees who oppose unlawful discriminatory practices by the employer. See R.C. 4112.02(I). To establish a prima facie case of unlawful retaliation, a plaintiff must show: (1) that she engaged in a protected activity; (2) that she was subject to an adverse employment action; and (3) that there was a causal link between the protected activity and the adverse action.Thatcher v. Goodwill Industries of Akron (1997), 117 Ohio App.3d 525,534-535; Chandler v. Empire Chem., Inc., MidwestRubber Custom Mixing Div. (1994), 99 Ohio App.3d 396, 402. If a plaintiff establishes a prima facie case of retaliation, the employer then has the burden of articulating a legitimate, nonretaliatory reason for its actions. If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation was merely a pretext. Thatcher, supra,
at 536; Chandler, supra; see, generally, Ricker v. John DeereIns. Co. (Sept. 29, 1998) Franklin App. No. 97APE 11-1505, unreported (1998 Opinions 4589, 4608-4609). On appeal after a trial on the merits in favor of the plaintiff, the issue of how or even whether the plaintiff succeeded initially in establishing a prima facie case is not directly at issue. Rather, the relevant inquiry is whether plaintiff produced sufficient evidence to sustain the jury's finding that defendants retaliated against her. See U.S. Postal Service Bd.of Governors v. Aikens (1983), 460 U.S. 711, 714-717,103 S.Ct. 1478, 1481-1482; Byrnes v. LCI Communication Holdings Co.
(1996), 77 Ohio St.3d 125, 132-133 (Resnick, J., dissenting).
Here, appellants contend that by filing her suit and by alleging in that suit that she was no longer an employee of Banc One, plaintiff rejected the benefits package offered to her on February 14, 1996 — a package that required plaintiff to remain an employee in order to receive the first ninety days of salary and required her to sign a release in order to receive the additional four months' severance pay. Appellants contend, therefore, that Banc One's subsequent withdrawal of the benefits was not an adverse action by Banc One against plaintiff but was merely a recognition that plaintiff had refused otherwise gratuitous benefits. Appellants further contend that reasonable minds could not disagree that its action was not causally connected to the filing of her lawsuit in general but only due to her allegations contained therein — allegations that Banc One reasonably construed as a rejection of the benefits package. We disagree, finding that the issues were properly ones for the jury.
First, the evidence was sufficient to show that Banc One's withdrawal of the benefits package, at least with regard to withdrawing her continued employment status through May 14, 1996, was an adverse employment action against plaintiff. Appellants cite several federal cases for the general proposition that an employer's refusal to grant or continue gratuitous benefits is not an adverse employment action. See,e.g., Stiltner v. Beretta U.S.A. Corp. (C.A.4, 1996),74 F.3d 1473; Jackson v. Lyons Falls Pulp Paper, Inc. (N.D.N Y 1994); Hansen v. Vanderbilt Univ. (M.D. Tenn. 1997),961 F. Supp. 1149; Cronin v. ITT Corp (S.D.N.Y. 1990),737 F. Supp. 224. These cases, however, generally involve the withdrawal of such benefits because the employee failed or refused to sign a separation agreement and release, the very conditions upon which the "gratuitous" benefits were to be given. See Jackson,supra, at 95; Hansen, supra, at 1153; Cronin, supra, at 230-231. At best, these cases stand for the proposition that Banc One did not take an adverse employment action against plaintiff when it withdrew the offer of four months' severance pay since this offer was contingent upon plaintiff signing a separation agreement and release of claims, which plaintiff could not do after having filed suit. However, Banc One did not only withdraw the four-month severance pay offer; it also terminated her employment with Banc One, including her pay and other benefits. As noted above, and as vehemently argued by appellants below and on appeal, the February 14, 1996 letter clearly informed plaintiff that she would remain an active employee until May 14, 1996, and would be paid her salary and other benefits at least until then. Thus, a reasonable jury could find that Banc One took an adverse action against plaintiff when it terminated her employment before May 14, 1996.
Similarly, we find that the evidence was sufficient to show a causal connection between the adverse action and the protected activity and that plaintiff sufficiently rebutted appellants' alleged nonretaliatory reason for its actions. The essential factual question in this case was whether Banc One, through its agent Mack, withdrew the benefits package merely because she filed her lawsuit alleging sex and age discrimination or because she made specific allegations in that lawsuit that Banc One, through its agents, reasonably believed constituted a resignation and rejection of the benefits package. If the latter were proved, there was no unlawful retaliation because there was no causal connection between the withdrawal of the benefits and the protected activity (i.e., the lawsuit in general or the particular discrimination claims) and Banc One took the action for a legitimate, nonretaliatory reason. Cf. Thompson v. West (M.D. Ala. 1995),885 F. Supp. 1502, 1510 (unrebutted evidence that employer terminated plaintiff because it believed that plaintiff had abandoned her job warranted summary judgment for employer on plaintiff's retaliation claim).
Here, the evidence presented to the jury was not conclusive as to the reason for Banc One's action. Mack testified, without contradiction, that he drafted his February 27, 1996 letter to plaintiff in response to plaintiff's allegations in her lawsuit indicating that she was no longer an employee and not because of her lawsuit in general. According to Mack, his letter merely confirmed that by resigning from Banc One she was no longer eligible for the benefits package. However, the language of Mack's letter is not so precise. As fully transcribed above, the letter first acknowledges the filing of plaintiff's lawsuit
in the Court of Common Pleas on February 21, 1996. The letter then states that "[a]s a result of this action, we have concluded that you have rejected the package of benefits which was offered to you on February 14, 1996." (Emphasis added.) Taken in context, the words "this action" refer to the filing of the lawsuit in general, not to any specific allegation contained therein. The letter also states that "[w]ith thefiling of your lawsuit, we consider that you have effectively resigned from employment at Banc One." (Emphasis added.) Again, the lawsuit itself, and not plaintiff's allegations that she had been terminated, is referenced as the basis for Banc One's conclusion that plaintiff had resigned. Significantly, nothing in the letter references any particular allegation in plaintiff's complaint, let alone the specific allegations that Banc One contends were the basis for its actions.
Thus, construing the evidence most strongly in plaintiff's favor, a reasonable jury could find that Banc One terminated plaintiff's pay and benefits because she filed her lawsuit alleging age and sex discrimination. As such, the trial court properly refused to direct a verdict or grant a judgment notwithstanding the verdict for appellants on plaintiff's unlawful retaliation claim. Likewise, the trial court did not abuse its discretion in failing to grant the appellants a new trial on the retaliation claim. Given the timing and contents of Mack's letter, the trial court could properly find that the jury's determination was not against the manifest weight of the evidence. Appellants' third assignment of error is not well-taken.
In their second assignment of error, appellants contend that the issue of punitive damages never should have gone to the jury or, in the alternative, that the jury's determination granting punitive damages was against the manifest weight of the evidence. In particular, appellants contend that plaintiff failed to show that appellants acted with malice, a requirement for an award of punitive damages. Appellants also argue that the trial court erred in refusing to admit plaintiff's complaint into evidence. First, we note that it is now settled that punitive damages are recoverable in an employment discrimination claim brought under Ohio anti-discrimination law. In its recent decision of Rice v. Certain Teed Corp.
(1999), 84 Ohio St.3d 417, the Ohio Supreme Court specifically held that punitive damages are recoverable under R.C. 4112.99, which provides a plaintiff with an independent "civil action for damages, injunctive relief, or any other appropriate relief" to remedy all forms of discrimination prohibited by R.C. Chapter 4112. As noted by the Supreme Court, the availability of punitive damages is consistent with the broad use of the word "damages" in the statute. Id. at 419. Moreover, the availability of punitive damages furthers the general purpose and intent of that statute — i.e., deterring the "socially noisome business" practice of employer discrimination. Id. at 421.
A plaintiff is not automatically entitled to an award of punitive damages upon proof of a violation of Ohio's anti-discrimination provisions. As noted by the Supreme Court in Rice, supra, at 422, Ohio law provides that punitive damages may be awarded only upon a finding of actual malice. Id. at 422 (noting that because of the malice standard, claims based upon a disparate-impact theory would not warrant punitive damages as a matter of law). "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis sic.) Preston v. Murty
(1987), 32 Ohio St.3d 334, syllabus. Moreover, the burden is on the plaintiff to establish actual malice by clear and convincing evidence. R.C. 2315.21(D)(2). Finally, unlike compensatory damages, the jury is given wide discretion in determining whether punitive damages are justified and in assessing the amount of such damages based upon its collective judgment as to the punitive and deterrent effect that such an award would have. See Smith v. Wade (1983), 461 U.S. 30, 51-52,103 S.Ct. 1625, 1638 (noting the common law distinction between the mandatory nature of compensatory damages upon a finding of liability and the discretionary nature of punitive damages based upon the jury's "moral judgment"); cf. Zoppo v. HomesteadIns. Co. (1994), 71 Ohio St.3d 552, 557 (under common law, initial discretion to determine whether to award punitive damages and the amount of such damages resides with the jury). At trial, the trial court properly instructed the jury on these standards, and the jury awarded plaintiff $250,000 in punitive damages.
Appellants argue that plaintiff failed to present clear and convincing evidence that appellants acted with malice in withdrawing the redeployment offer. In particular, the appellants contend that, at worst, the evidence shows that Banc One, through its agents, misunderstood plaintiff's actions as a rejection of the benefits package and that this "misunderstanding" fails to satisfy the malice standard. SeePreston, supra, at 335 (misconduct greater than mere negligence is required for punitive damages). Second, appellants argue that the malice standard requires that the plaintiff prove more egregious conduct than that used to prove her retaliation claim. We reject both contentions.
Initially, we have already held that the jury was entitled to find retaliation on the evidence presented. Because retaliation was a permissible verdict on the evidence presented, the issue resolves to whether the evidence likewise supports a claim for punitive damages. While defendants contend that, at worst, defendants simply misunderstood plaintiff's actions as a rejection of the benefits package, they fail to recognize that on this evidence the jury could reject, and must have rejected, their "misunderstanding" theory. Moreover, the same evidence that supported plaintiff's retaliation claim was also sufficient to show malice for purposes of punitive damages: actual malice has been defined as "that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons." (Emphasis added.)Columbus Finance v. Howard (1975), 42 Ohio St.2d 178, 182-183, quoting Pickle v. Swinehart (1960), 170 Ohio St. 441, at 443. See, also, Schellhouse v. Norfolk Western Ry. Co. (1991),61 Ohio St.3d 520, 525, fn.2; Staff Builders, Inc. v. Armstrong
(1988), 37 Ohio St.3d 298, 304. To the extent that defendants rely upon Ward v. Hengle (1997), 124 Ohio App.3d 396, and Ryansv. English Nanny Governess School, Inc. (1996), 117 Ohio App.3d 303, those cases are not dispositive, as neither case involved a retaliation claim.
By finding defendants had retaliated against plaintiff because of her protected activity, the jury found the necessary predicate for an award of damages based on malice. The jury then had the prerogative, although not the obligation, to award punitive damages as appropriate. Despite defendants' contentions to the contrary, because the evidence allowed the jury to conclude that defendants had retaliated against plaintiff, the evidence likewise supported the instruction on punitive damages premised on malice.
In sum, we find that the trial court did not err in failing to grant a directed verdict, judgment notwithstanding the verdict, or a new trial on the issue of punitive damages.
Finally, we also reject appellants' contention that the trial court committed prejudicial error in refusing to admit plaintiff's original complaint as evidence. Appellants argue that by refusing to admit the complaint, the trial court precluded the jury from fully and fairly evaluating the appellants' proffered explanation for terminating plaintiff's employment. The trial court apparently refused to admit the complaint because it did not want to confuse or distract the jury with allegations related to plaintiff's original sex and age discrimination claims not at issue in the trial but otherwise contained in the original complaint. Significantly, however, the trial court specifically granted appellants' counsel permission to cross examine the plaintiff as to her allegations in the complaint and to read relevant portions from the complaint if he wanted. In fact, appellants' counsel did cross-examine plaintiff as to her complaint, and in particular, elicited from her that she had alleged at least five times in that complaint that she had been terminated. Given this record, we do not find that the trial court committed prejudicial err in refusing to admit the complaint into evidence. For these reasons, appellants' second assignment of error is not well-taken.
In their first assignment of error, appellants contend that the trial court erred in failing to grant a directed verdict, judgment notwithstanding the verdict, and/or a new trial on plaintiff's promissory estoppel claim. Given that plaintiff's retaliation claim alone is sufficient to sustain the judgment against appellants, any error in allowing the promissory estoppel claim to go to the jury or in refusing to vacate the jury verdict is harmless. Because our resolution of this assignment of error would have no effect on the judgment below, we overrule it as moot. App. R. 12(A)(1)(c).
 PLAINTIFF'S CROSS-APPEAL
In her cross-appeal, plaintiff raises a single assignment of error, in which she challenges the trial court's refusal to award any attorney fees after the jury determined that such fees should be granted. In a post-trial motion and affidavit, plaintiff requested approximately $235,000 in attorney fees based upon her contingency fee contract with her attorney and/or an enhanced lodestar calculation. The trial court determined that the defendants had successfully rebutted the presumption in favor of attorney fees. In particular, the trial court noted that the punitive damages award was $250,000 and constituted more than one-half of plaintiff's total verdict amount. Given these facts, the trial court held that the punitive damages would compensate the plaintiff for her attorney fees and have the appropriate deterrent influence on defendants.
Plaintiff does not directly challenge the specific reasoning of the trial court in refusing to award any fees nor argue that the trial court abused its discretion in this regard. Rather, plaintiff contends: (1) that the trial court violated plaintiff's rights to a jury trial under Section 5, Article I, of the Ohio Constitution by overruling the jury's determination that attorney fees should be awarded; and (2) that the trial court was required to hold an evidentiary hearing before denying the fees. We reject both contentions.
As to plaintiff's constitutional challenge, the Ohio Supreme Court has specifically held that a litigant does not have a constitutional right to trial by jury as to the determination of whether, or in what amount, attorney fees should be awarded.Digital Analog Design Corp v. North Supply Co. (1992),63 Ohio St.3d 657, paragraph two of the syllabus. The right to a jury trial under the Ohio Constitution extends only to those matters recognized as jury issues at common law at the time of the adoption of the Ohio Constitution. Id. at 661. Because there was no action for attorney fees at common law, there is no constitutional right to a jury trial on the issue. Id. at 662.
In Digital, the Ohio Supreme Court further announced that the amount of attorney fees to be awarded in any particular case lies in the sound discretion of the trial judge even if a jury has determined that such fees should be awarded. Id. at 664-665. Moreover, although the presumption is that attorney fees may be awarded if punitive damages have also been awarded, the trial court may decline to award any attorney fees if the defendant successfully rebuts the presumption in favor of such fees. Id. at 664. "Thus, a trial court may consider whether the punitive damages awarded are adequate both to compensate the plaintiff for his attorney fees and to fulfill the punitive and deterrent purpose of the exemplary damages awarded." Id. If the court concludes that the punitive damages are sufficient to satisfy these purposes without the imposition of attorney fees, the court may decline to award them. Id. at 664-665. This is exactly what the trial court did here.
Plaintiff argues, however, that Digital was "substantially overruled" by the Ohio Supreme Court in Zoppo, supra. We disagree. In Zoppo, at paragraph two of the syllabus, the court held that R.C. 2315.21(C)(2), which at the time provided that the amount of punitive damages to be awarded in a tort action was to be determined by the trial court, violated the plaintiff's right to trial by jury under the Ohio Constitution. In so holding, the court specifically distinguished between the right to have a jury assess punitive damages from the right to have a jury assess attorney fees. As noted by the court, "[w]ith punitive damages, the right stems from common law; however, no such right existed at common law for attorney fees." Id. at 557. Thus, contrary to plaintiff's contention,Zoppo actually affirmed, not overruled, the essential holding of Digital.
Similarly, we reject plaintiff's contention that the trial court was required to hold a hearing on the issue of attorney fees before refusing to award any such fees. According to plaintiff, without a hearing, the trial court had no evidentiary basis to determine the amount of attorney fees necessary to compensate the plaintiff or the amount necessary to punish the defendants. However, unless attorney fees are sought as a sanction for frivolous conduct pursuant to R.C.2323.51, an evidentiary hearing is not mandated. Okocha v.Fehrenbacker (1995), 101 Ohio App.3d 309, 321. Moreover, evidentiary material was presented to the trial court in the form of affidavits as to what was necessary to compensate the plaintiff, and it appears that the trial court accepted plaintiff's requested amount as reasonable. As to the issue of what was necessary to punish the defendants, evidence was already presented at trial concerning the alleged conduct of the defendants and the net worth of Banc One Corporation. It was upon this evidence that the jury determined that $250,000 in punitive damages was appropriate. As such, plaintiff has failed to show why an evidentiary hearing on attorney fees was otherwise necessary in this case. Cf. Digital, supra, at 664 (noting that trial court's determination on the amount of fees may be based upon evidence presented either at a post-trial hearing or at trial). For these reasons, plaintiff's single assignment of error is not well-taken.
For the foregoing reasons, defendants' first assignment of error is overruled as moot, and their second and third assignments of error are overruled; plaintiff's single assignment of error is overruled; and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and BRYANT, JJ., concur.